# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JENNIFER GRACE
HERNANDEZ,

              Plaintiff,

v.                                 Case No. 6:23-cv-735-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

              Defendant.

_____

## OPINION AND ORDER[2]

### I.   Status

Jennifer Grace Hernandez ("Plaintiff") is appealing the Commissioner of

the Social Security Administration's ("SSA('s)") final decision denying her claim

for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is

the result of fibromyalgia, lupus, Raynaud's disease, Sjogren's syndrome, pain,

migraines and other headaches, and pain-induced anxiety. Transcript of

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed June 20, 2023; Reference Order (Doc. No. 13), entered June 20, 2023.

Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"),
filed June 20, 2023, at 64, 73, 177, 225, 249.[3] Plaintiff protectively filed an
application for DIB on May 15, 2017, alleging a disability onset date of October
15, 2015.[4] Tr. at 157-60. Later, Plaintiff amended the alleged onset date to July
29, 2015. Tr. at 269-78, 745, 775. The application was denied initially, Tr. at 63,
64-70, 81, 82-87, and upon reconsideration, Tr. at 71, 72-80, 94, 95-99.

On July 18, 2019, an Administrative Law Judge ("ALJ") held a hearing,
during which he heard testimony from Plaintiff, who was represented by
counsel, and a vocational expert ("VE"). See Tr. at 28-62. At the time of the
hearing, Plaintiff was thirty-three (33) years old. Tr. at 35. On July 28, 2020,
the ALJ issued a decision finding Plaintiff not disabled through March 31, 2016,
the date she was last insured for DIB (the "DLI"). See Tr. at 15-21.

Thereafter, Plaintiff sought review of the Decision by the Appeals
Council. See Tr. at 4-5 (Appeals Council exhibit list and order), 153-56 (request
for review). On January 5, 2021, the Appeals Council denied Plaintiff's request

---

[3]    Some of the documents in the administrative transcript are duplicated.
Citations are to the first time a document appears.

[4]    Although actually completed on May 16, 2017, see Tr. at 157, the protective
filing date for the DIB application is listed elsewhere in the administrative transcript as May
15, 2017, see, e.g., Tr. at 64, 73. The actual DIB application summary indicates the disability
onset date is October 15, 2015. Tr. at 157. In other places in the administrative transcript,
August 1, 2011 is listed as the alleged onset date. Tr. at 65, 73.

for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner.

Plaintiff then appealed to this Court. <u>See</u> Compl. (Doc. No. 1), filed February 14, 2021, Case No. 6:21-cv-305-EJK. On May 12, 2022, the Court entered an Order reversing and remanding the matter for further proceedings. Tr. at 823-29; <u>see also</u> Tr. at 830 (Judgment). In particular, the Court found error in the ALJ's evaluation of the opinion of a treating physician. Tr. at 824-28. On remand, the Appeals Council remanded the matter to an ALJ to take action consistent with the Court's Order. Tr. at 834.

The ALJ held a hearing on November 1, 2022, during which he heard from Plaintiff (who remained represented by counsel) and a VE.[5] Tr. at 770-801. By this time, Plaintiff was thirty-six (36) years old. Tr. at 776. The ALJ issued a Decision on January 5, 2023 finding Plaintiff was not disabled through March 31, 2016, the DLI. Tr. at 745-62. The Appeals Council did not assume jurisdiction, making the ALJ's Decision the final decision of the SSA. On April 21, 2023, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[5]     This hearing was held via telephone, with Plaintiff's consent, because of the ongoing COVID-19 pandemic. Tr. at 772, 872-87, 915-16.

On appeal, Plaintiff contends the ALJ: 1) "failed to determine the range of fluctuation of Plaintiff's symptoms when determining her residual functional capacity [('RFC')] pursuant to SSR 96-8p"; and 2) "failed as a matter of law to provide adequate rationale when evaluating the supportability and consistency of the medical opinions." Plaintiff's Memorandum of Law (Doc. No. 17; "Pl.'s Mem."), filed August 4, 2023, at 17, 20 (emphasis omitted).[6] On September 8, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing the issues. Then, on September 29, 2023, Plaintiff's Memorandum of Law in Reply (Doc. No. 23; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[7] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant

---

[6]      Plaintiff's Memorandum is only partially numbered and the numbering appears to be incorrect. Citations are to the pagination assigned by the Court's electronic filing system (CM/ECF).

[7]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

(1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry through step four, where the ALJ ended the inquiry based on his findings at that step. See Tr. at 747-62. At step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of July 29, 2015 through her [DLI] of March 31, 2016." Tr. at 747 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff through the DLI "had the following severe impairments: Sjogren's syndrome, systemic lupus erythematosus (SLE), lupus, Reynaud's syndrome and fibromyalgia." Tr. at 748 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff through the DLI "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 748 (emphasis and citation

- 5 -

omitted).

The ALJ determined that Plaintiff had the following RFC through the DLI:

> [Plaintiff could] perform light work as defined in 20 CFR [§] 404.1567(b) except [she] can only sit or stand for an hour at a time and walk for 30 minutes at a time. She can sit for up to 6 hours in an 8-hour day; stand for up to four hours and walk up to three hours in an 8-hour day. [Plaintiff] can only lift or carry up to ten pounds frequently, up to 20 pounds occasionally and can never lift or carry over 20 pounds. [Plaintiff] can continuously use both hands and can operate foot controls. [Plaintiff] can frequently climb stairs and ramps and can balance, stoop, kneel, crouch and crawl. She can only occasionally climb ladders and scaffolds and can only occasionally be exposed to unprotected heights, moving mechanical parts, and extreme temperatures.

Tr. at 749 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff through the DLI "was capable of performing past relevant work" as a "Leasing Agent and Order Clerk." Tr. at 760 (emphasis omitted). The ALJ concluded Plaintiff "was not under a disability . . . at any time from August 1, 2011, the alleged onset date,[8] through March 31, 2016, the [DLI]." Tr. at 762 (emphasis and citation omitted).

---

[8]    Although the ALJ's final finding contains an erroneous alleged onset date, the rest of the Decision makes clear the ALJ was aware of the amended onset date of July 29, 2015. See, e.g., Tr. at 745, 747, 750, 751.

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

# IV.   Discussion

Plaintiff argues the ALJ erred in two ways. They are addressed in turn.

## A. Evaluation of subjective symptoms

Plaintiff contends the ALJ erred in evaluating her subjective symptoms, particularly in light of the fluctuation of symptoms she experiences from lupus and fibromyalgia. Pl.'s Mem. at 17-20. Responding, Defendant argues the ALJ assessed an RFC that is supported by the evidence, and the ALJ did not err in evaluating Plaintiff's subjective complaints. Def.'s Mem. at 5-13.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and

> aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869.[9] Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically

---

[9]     Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." <u>Sorter v. Soc. Sec. Admin., Comm'r</u>, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." <u>Id.</u>

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. <u>Id.</u> "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case

record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. When an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

Here, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 751. The ALJ then went on to discuss the evidence in great detail. Tr. at 751-60.

The ALJ initially noted that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" from the alleged onset date through the DLI "are inconsistent." Tr. at 751. The ALJ discussed the symptoms Plaintiff reported to her providers, accurately characterizing them as "mild"

with "normal" examinations through the DLI. Tr. at 751, 752. Further, the ALJ

noted that after fall of 2015, Plaintiff "did not follow-up with treatment until

December 2016, when she started seeing [Magaly] Villafradez-Diaz, [M.D.,] her

rheumatologist." Tr. at 751 (citing Ex. 2F at 50, located at Tr. at 367). The ALJ

also determined that Plaintiff's pain was managed by medication and steroid

injections. Tr. at 760 (citations omitted). Finally, the ALJ found that Plaintiff

"was independent in her activities of daily living" through the DLI. Tr. at 760

(citations omitted).

Plaintiff does not challenge these findings. Instead, she argues the ALJ

failed to take into account that she has "good days" and "bad days" as a result

of fibromyalgia and lupus.[10] A review of the ALJ's Decision, however, reveals

no such failure. In fact, in addressing Dr. Villafradez-Diaz's opinion (discussed

in more detail below), the ALJ specifically noted the doctor's opinion that

Plaintiff would have "good days" and "bad days" as a result of her conditions.

Tr. at 758. For a variety of reasons, however, the ALJ found Dr. Villafradez-

---

[10]     Plaintiff in challenging the ALJ's subjective symptom findings on her lupus and
fibromyalgia urges the Court to apply various Eleventh Circuit opinions that address mainly
mental conditions to determine that symptoms wax and wane and an ALJ's failure to take
into account the longitudinal record of such evidence is error. See Pl.'s Mem. at 18-19. The
SSR relevant to fibromyalgia essentially directs the same thing. See SSR 12-2p (directing that
"for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible
because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good
days and bad days.'"). Regardless, here, the ALJ did not abrogate the duty to take into account
the longitudinal record.

Diaz's opinion unpersuasive as to the time period prior to the DLI. Tr. at 758. This finding will also be addressed below, but suffice it to say, the ALJ did not fail to consider the "good days" and "bad days" effects of Plaintiff's conditions. Moreover, the ALJ complied with applicable authority in addressing her subjective complaints. The ALJ did not err.

### B.  Evaluation of opinion evidence

Plaintiff argues the ALJ erred in addressing the opinion evidence. Pl.'s Mem. at 20-29. Plaintiff first contends the ALJ elected not to rely on an examining opinion to support the RFC finding; second, she alleges the ALJ erred in relying on the opinion of medical expert ("ME") Joseph Gaeta, M.D.; third, she challenges the ALJ's evaluation of the opinion of Dr. Villafradez-Diaz, the subject of this Court's remand Order. Id.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work

activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).[11] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors,

---

[11]     Plaintiff filed her application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[12]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v.

---

[12] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

<u>Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Plaintiff in challenging the ALJ's findings on the medical opinion evidence makes six general arguments that are addressed in turn. First, she argues the ALJ erred in assessing an RFC that did not take into account any examining opinion.[13] Pl.'s Mem. at 21. However, "the task of determining a [Plaintiff's RFC] and ability to work rests with the [ALJ], not a doctor." <u>Moore v. Soc. Sec. Admin, Comm'r</u>, 649 F. App'x 941, 945 (11th Cir. 2016) (citation omitted). Additionally, there were numerous other opinions of record that the ALJ considered in assigning the RFC. <u>See</u> Tr. at 757-59. The ALJ did not err in this regard.

Second, Plaintiff contends the ALJ should not have relied on the opinion of the non-examining ME, Dr. Gaeta. Pl.'s Mem. at 21. According to Plaintiff, the ALJ failed to consider that Dr. Gaeta's opinion is inconsistent with Dr. Diaz's opinion and with the opinion of a non-examining state-agency physician, Barry Schwartz, M.D. <u>Id.</u> at 21-22.

The ALJ, in finding Dr. Gaeta's opinion persuasive, stated:

> Dr. Gaeta is a board-certified physician; he has an awareness of all the evidence in the record and an

---

[13]     Plaintiff does not point to any actual examining opinion; she only argues generally that the ALJ failed to take one into account.

> understanding of Social Security Disability programs and evidentiary requirements. Most importantly, his opinion regarding [Plaintiff] is consistent as it is well supported by Dr. Villafradez-Diaz['s] records and the generally normal physical examinations.

Tr. at 759 (citations omitted). The ALJ considered the required factors, as well as others, in addressing Dr. Gaeta's opinion. The ALJ was not required to address the opinion's consistency, or lack thereof, with other <u>opinions</u> of record (especially when those opinions were addressed at other points in the Decision) when the ALJ adequately addressed the supportability and consistency factors with respect to the <u>evidence</u>.

Third, Plaintiff argues the ALJ erred in addressing the opinion of Dr. Villafradez-Diaz, which was the subject of the last appeal. Pl.'s Mem. at 22-29. Dr. Villafradez-Diaz was Plaintiff's treating rheumatologist beginning December 2, 2016 (after the DLI). <u>See</u> Tr. at 367-71. [14] On June 17, 2019 and August 13, 2019, she rendered opinions regarding the effects of Plaintiff's lupus and fibromyalgia that, if accepted, would likely result in a finding of disability. <u>See</u> Tr. at 651-56, 730-31. Regarding the June 17, 2019 opinion, Dr. Villafradez-Diaz was asked to evaluate the timeframe from December 1, 2015 through the date of the opinion. Tr. at 651, 655. Regarding the August 13, 2019 opinion, she

---

[14] This particular treatment record is labeled "Encounter # 9" because Plaintiff had been followed by another rheumatologist with the same facility (Linette Lopez-Lopez, M.D.) prior to establishing care with Dr. Villafradez-Diaz. Tr. at 367.

was asked to evaluate the timeframe from July 29, 2015 through the date of the opinion. Tr. at 730.

This Court, in reversing and remanding the SSA's first final decision, found that the ALJ erred in addressing the August 13, 2019 opinion because the ALJ did not consider whether it was retrospective to the period prior to the DLI. See Tr. at 826-28. The Court noted that Dr. Villafradez-Diaz substituted for a colleague (Dr. Lopez-Lopez, see Tr. at 367, 378) in caring for Plaintiff, and her opinion took into account the colleague's notes, thus covering the relevant time prior to the DLI. Tr. at 826-28. Accordingly, the Court found error in the ALJ's election not to rely on the opinion without considering whether it was retrospective. Tr. at 827-28.

On remand, the ALJ addressed Dr. Villafradez-Diaz's opinions in great detail, ultimately finding "no basis for a change in the earlier decision." Tr. at 751. The ALJ wrote:

> [T]he undersigned has fully addressed the concerns relating to the assessment of Dr. Villafradez-Diaz' opinion, specifically, the need for [Plaintiff] to be off-task 25% or more of the day and to be absent 1-2 times monthly. While Dr. Villafradez-Diaz stresses the need to see [Plaintiff] within a week to evaluate results following a flare, the undersigned does not see how doing so would translate to the number of absences indicated nor does the explanation that [Plaintiff] "would not be sharp in mathematics, money handling issues or any highly demanding concentration task" justify the need to be off-task for 25% of a "bad day", a term itself which itself is not qualified or quantified.

- 18 -

> In short, while [Plaintiff's] symptoms may well impact concentration, the undersigned does not see a documented objective medical basis from Dr. Villafradez-Diaz to support the functional limitations cited. Separately, while the undersigned considered the opinion retrospective in nature and acknowledge[d] the fact she had access to prior records from 2015 given the treating relationship [Plaintiff] had with her office, the undersigned does not see any indication in the medical record from that earlier period (as discussed above) to support the limitations cited two years later.

Tr. at 751-52 (citations omitted). Elsewhere in the Decision, in addressing the opinion evidence generally, the ALJ elaborated as to Dr. Villafredez-Diaz's opinions:

> The undersigned finds this opinion unpersuasive for several reasons. First, it is based on the lack of ongoing or consistent treatment, as [] she only first saw [Plaintiff] on December 2, 2016, over eight months after [Plaintiff's DLI]. Second, Dr. Villafradez-Diaz also deferred from offering specific functioning limitations, instead recommending a functional assessment, by a physical therapist, which further undercuts the strength of her opinion. Third, in support of her opinion, Dr. Villafradez-Diaz points only to flares in fibromyalgia, which she characterizes as chronic pain and fatigue, but without any specific reference to the extent or frequency of such flares, nor any specific clinical findings in treatment notes documenting such flares. Additionally, the record reveals that [Plaintiff] was diagnosed with fibromyalgia after her [DLI]. Fourthly, the treatment notes document only generalized symptoms/signs, and again all after [Plaintiff's DLI].

Tr. at 758-59 (citations omitted). (The ALJ also repeated some of the earlier findings about Dr. Villafradez-Diaz's opinions. See Tr. at 759).

- 19 -

The ALJ adequately complied with the remand Order and applicable authority with respect to Dr. Villafradez-Diaz's opinions, and the ALJ's findings are supported by substantial evidence. Plaintiff argues the ALJ made a mistake of fact in finding the opinions were "based on a lack of ongoing or consistent treatment." Pl.'s Mem. at 26; Tr. at 758. While the ALJ could have used a more precise phrase, the ALJ did not make the same mistake of fact that caused the first reversal. It is evident that the ALJ was observing the doctor did not <u>personally</u> treat Plaintiff on an ongoing and consistent basis as of the time of the DLI. In context, it is clear the ALJ was well aware that the doctor had access to notes from prior to the DLI. <u>See</u> Tr. at 758-59.

Fourth, Plaintiff quarrels with the ALJ's finding that Dr. Villafradez-Diaz did not offer specific functional limitations, instead recommending a functional assessment by a physical therapist. Pl.'s Mem. at 26; Tr. at 758. The ALJ's observation is generally accurate—on forms specifically asking for functional limitations, Dr. Villafradez-Diaz wrote instead: "To see PT for functioning capacity objective evaluation." Tr. at 656; <u>see also</u> Tr. at 653 (similar).

Fifth, Plaintiff takes issue with the ALJ's finding that Dr. Villafradez-Diaz "points only to flares . . . without any specific reference to the extent or frequency of such flares, nor any specific clinical findings in treatment notes documenting such flares." Tr. at 758; Pl.'s Mem. at 27. This finding is generally accurate. Dr. Villafradez-Diaz was asked about "bad days," and she opined

- 20 -

Plaintiff would have them. Tr. at 730. In support, she did indicate that joint pain and swelling with elevation of inflammatory markers and other blood levels, as well as fatigue / malaise would be the cause. Tr. at 730. Aside from these general observations, Dr. Villafradez-Diaz did not cite any clinical findings or notes regarding flares.

Sixth, Plaintiff takes issue with the ALJ's finding that Dr. Villafradez-Diaz's opinion is not corroborated by the evidence dated prior to the DLI. Pl.'s Mem. at 28; Tr. at 752. Despite Plaintiff citing some evidence of various symptoms she experienced prior to the DLI, see Pl.'s Mem. at 28-29 (citations omitted), this finding is supported by substantial evidence and need not be disturbed. See, e.g., Tr. at 382-99. In short, the ALJ correctly determined that Plaintiff's symptoms were generally mild and examinations generally normal prior to the DLI. See Tr. at 752.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 18, 2024.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record